IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA                                                    PLAINTIFF

V.                          NO. 4:05cv00063-01 GH

ROBERT LEE PHILLIPS                                                          DEFENDANT

PROPOSED FINDINGS AND RECOMMENDATIONS

INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge George Howard, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and two copies of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or

>other non-testimonial evidence desired to be introduced at
>the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite 402
>Little Rock, AR 72201-3325

## INTRODUCTION

Defendant Robert Lee Phillips has filed a motion to suppress statements (docket #28) and memorandum in support (docket #29). The United States filed a response (docket #30) and an amended response (docket #35). Defendant then filed a reply to the response (docket #37). Defendant contends that two statements he gave a Jefferson County investigator are rendered involuntary by his alleged impairment from the drug ecstacy[1] and brandy. The motions were referred for recommended disposition and a hearing was held on January 23, 2006. Based on the pleadings and evidence, I recommend that the motion be denied.

## GENERAL BACKGROUND

Defendant is charged with being a felon in possession of a firearm. Sometime around midnight on Saturday, October 16, 2004, an individual was shot in the back of the head at the Brown Sugar Club in Altheimer, Arkansas. Defendant was admittedly at the

---

[1] Ecstacy is a street name for MDMA (3-4 methylenedioxymethamphetamine), which is a synthetic, psychoactive drug chemically similar to the stimulant methamphetamine and the hallucinogen mescaline. *See*, http://www.nida.nih.gov/Infofacts/ecstasy.html

club that night. Jefferson County Sheriff's officers received a radio call on the incident shortly after midnight, telling them to be on the lookout for a certain described automobile. They were also given a clothing description of the suspected shooter. Deputies spotted the vehicle traveling at a high rate of speed and gave chase. The vehicle slowed and stopped, and officers conducted a felony traffic stop. Defendant was one of the four occupants. His clothing fit the clothing description of the alleged shooter. At the time of the stop, all the occupants followed orders to keep their hands where the officers could see them and to exit the car one at a time. All were able to cooperate with the officers, following their directions. All four were cuffed, arrested and taken to the sheriff's office. According to one of the deputies, the contact with the car and subjects occurred at 12:53 a.m. Deputies Brunson, Wilkins and Rodgers, all involved in the stop and arrest, testified at the detention hearing. They all said they did not notice any behavior of Defendant that would suggest he was intoxicated or impaired by drugs. Deputy Wilkins testified that he had the chance to observe Defendant for thirty to forty minutes and that he was talking normally and asked what was going on and stated that he did not know about the shooting.

Defendant was held for questioning and Deputy Robert Rodgers sat with him for thirty to forty-five minutes at the sheriff's office. Rodgers testified that Defendant fell asleep during that time. He said Defendant woke up a couple of times, but did not say anything and fell back asleep. Apparently, Defendant was placed in lockup after this period.

Investigator Gary Young testified that he awakened Defendant early that Sunday morning to take his statement. He said he gave Defendant the *Miranda*[2] warnings, utilizing

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

a standard rights and waiver form. He said he stopped at each step of the warnings and asked Defendant if he understood. Defendant replied that he did. The waiver form shows a starting time of 6:45 a.m., and Defendant signed the form at 6:48 a.m.,[3] so the warning process took approximately three minutes. Young testified that he then took an oral statement from Defendant in which he stated that he had possession of a pistol the evening of the shooting incident at the Brown Sugar Club and that he did go to the club. Defendant further admitted that he remembered pulling the pistol and firing it into the air. Young reduced the statement to writing.[4] The form shows that he started taking it at 6:55 a.m. This is the first statement at issue.

On Monday afternoon, October 18, 2004, at approximately 2:35 p.m., Young took a second statement from Defendant. By that time, the officers had done further investigation, learning that Defendant had two prior felony convictions. They had also found the weapon involved in the shooting and had interviewed witnesses. They had developed the facts that Defendant had been involved in an incident at a liquor store the Friday immediately before the shooting, that this incident was potentially linked to the Saturday shooting at the Brown Sugar Club, and that it supplied a motive for the shooting. Young said they wanted the additional interview to get a clearer statement of events. Young again advised Defendant of his *Miranda* rights, using the standard rights and waiver form.[5] Defendant signed this form at 2.38 p.m., and Young taped the subsequent interview

---

[3]  This waiver form is Gov't Ex. A.

[4]  Gov't Ex. B.

[5]  Gov't Ex. C.

with Defendant.[6]  The United States introduced a transcript of this interview and a copy of the original tape at the detention hearing.  The admissibility of this statement is also in dispute.

Investigator Young testified that he had twenty-six years' experience and was familiar with persons' behavior when under the influence of drugs or alcohol.  In his opinion, Defendant was not under the influence and was alert and attentive.  He stated that he did have to wake Defendant to take the first statement, but did not have to do so to take the second on Monday afternoon.  He said Defendant was able to accurately state his date of birth and address, that he appeared to understand his rights and that he signed both consent forms and initialed and signed the first statement.  Young said he felt no need to have Defendant checked for drug or alcohol impairment because he did not feel there was any problem.  He stated that Defendant was evasive in his statements and that he had a selective memory.  When it served Defendant well, he remembered details, but when it did not, he simply responded that he did not remember.  The statement is inculpatory as to the charge pending here, but it appears Defendant was trying to escape guilt or to mitigate as far as any potential charge based on the shooting itself.

Defendant's position is that he was under the influence of ecstacy and alcohol, and was thus not capable of making a knowing and intelligent waiver of his rights or to validly consent to be interviewed at either time.  He testified at the suppression hearing, saying that he had used ecstacy on both Friday evening (when he had been involved in an incident at a liquor store) and Saturday evening.  He denied any memory whatever of being

---

[6]  The transcript of the interview is Gov't Ex. D and the copy of the original tape is Gov't Ex. E.

advised of his *Miranda* rights, signing the waiver forms or giving the statements. He testified that he remembered taking four ecstacy pills Saturday evening, two before he left home and two later, after being picked up by his friends. He said he had never taken that high a dose before. As will be discussed below, that assertion conflicts with other statements he has made. At the hearing, he denied any further memory of the events of that night, the next morning or of giving waivers or statements.

## APPLICABLE LAW

To be admissible, an incriminating statement must be voluntary. *Chavez v. Martinez*, 538 U.S. 760 (2003). Any waiver of the defendant's *Miranda* rights must be voluntary, knowing and intelligent. *See*, *Miranda* at 475. The government bears the burden of proving admissibility by a preponderance of the evidence, and the standard for voluntariness of a waiver is essentially the same as for voluntariness of a confession. *Colorado v. Connelly*, 479 U.S. 157, 168-70 (1986).

There are two distinct aspects of the inquiry into the validity of a *Miranda* waiver. First, the relinquishment of the right must have been the product of free choice rather than intimidation, coercion or deception. Second, the defendant must have had full awareness of the nature of the right and the consequences of waiver. *United States v. Turner*, 157 F.3d 552, 555 (8th Cir. 1998). There is no allegation or evidence that the deputies engaged in intimidation, coercion or trickery in obtaining the statements, so the second prong of the inquiry is really what is in issue here. In making the determination whether a waiver is voluntary, a court must consider the totality of the circumstances. While age, education and experience are factors, they are not necessarily dispositive. *United States v. Makes*

*Room*, 49 F.3d 410, 414-15 (8th Cir. 1995).  Nor are exhaustion and drug intoxication factors that will necessarily invalidate a *Miranda* waiver.  *United States v. Korn*, 138 F.3d 1239, 1240 (8th Cir. 1998).

At the hearing, Defendant's counsel cited *Beecher v. Alabama*, 408 U.S. 234 (1972) as an example of the attitude of the Supreme Court as to confessions taken when a defendant is under the influence of a drug.  There is no doubt of the invalidity of a confession made when the defendant is clearly under the influence to the extent he is not capable of making a knowing and intelligent waiver of his right against self incrimination.  However, *Beecher* is clearly distinguishable from the present situation.  There, the defendant had made an initial confession to rape and murder while at gunpoint and under the threat of imminent death from arresting officers.  One officer pressed a loaded gun to his face while another pointed a rifle against the side of his head.  The police chief then asked the defendant whether he had raped and killed a white woman.  When he denied it, the chief called him a liar and said if he did not tell the truth, he would kill him.  The other officer fired a rifle next to the defendant's ear. He immediately confessed. The confession at issue on the appeal was an oral confession made one hour after his arrest, when the defendant was in extreme pain from a gunshot that had blown most of the bone out of one leg and shortly after the doctor gave him two large injections of morphine.  His condition at the time, combined with the continuing effect of the first, forced confession, was the

basis for invalidating the statement.[7] Such barbaric circumstances simply are not present in this case.

## DISCUSSION

The two statements at issue were clearly the result of custodial interrogations, so the United States bears the burden of proving by a preponderance that the waivers and statements are valid. Defendant makes no contention, and there is no evidence, that any of the officers were guilty of any intimidation, coercion or deception. His argument is simply that he was so impaired from taking ecstasy and drinking brandy that he does not remember any of the events surrounding his arrest and questioning and that he has no memory whatever of being warned of his *Miranda* rights or of giving either statement. He argues that he was incapable of waiving his rights and that the two statements are not admissible. To determine the validity of the waivers and voluntariness of the statements, we must look at the totality of the circumstances.

Defendant was twenty-five years of age at the time the statements were taken. A forensic evaluation has been made at the Federal Detention Center, SeaTac, Washington, to determine his competency at the time of the alleged crime and his capacity to assist in his defense. As part of that evaluation, he was given the Wechsler Adult Intelligence Scale, Third Edition. The results showed functioning within the Borderline range of ability, with an estimated full IQ of 76. His verbal IQ was measured at 70 (Borderline), his performance IQ was measured at 86 (Low Average). Based on these scores and a battery

---

[7] This was the second appeal of the case. Beecher had been convicted on the basis of two other confessions, the first of which was the one obtained under threat of death. The Supreme Court voided the first conviction in *Beecher v. Alabama*, 389 U.S. 35 (1967). Alabama then retried him, introducing the oral confession made shortly after arrest.

of other tests, the psychologist determined that Defendant's intellectual functioning is "probably" in the low-average range, which means he is "functioning at a slightly lower intellectual level than most individuals his age."[8] These facts alone do not compel a finding that the waivers and statements were involuntary. In *United States v. Makes Room, supra*, the Eighth Circuit found a confession to be valid on facts closely paralleling the facts here. Defendant Makes Room was only nineteen years old, six years younger than the defendant here. His IQ was average or lower than average, he had an eighth grade education and he claimed that he was intoxicated. The Court declined to adopt a *per se* rule of involuntariness just because intoxication and fatigue were involved and further stated that while age, education and experience are factors, they are not dispositive. *Makes Room* at 415. Here, Defendant was old enough and intelligent enough to fully understand the import of the *Miranda* warnings and the consequences of waiving his rights. He was given a full verbal and written warning before each statement and signed the waiver forms. The taped interview demonstrates that the warnings were effectively given and he acknowledged on the tape that he understood each part of the warnings. He also signed each statement. He had prior experience with the criminal system, having had prior felony convictions. Investigator Young, who took both statements, may not have gone into the specific charge of "felon in possession of a firearm," but Defendant surely knew that he had been previously convicted and that to possess a firearm was a crime. Defendant's age, IQ, and limited education would not render the confessions involuntary.

---

[8] Def.'s Ex. B.


The first interrogation started at 6:55 a.m., approximately six hours after Defendant was arrested, and even longer after he allegedly took the ecstacy. Although neither side presented evidence of how long, if at all, ecstacy would impair one mentally, this was a significant period of time.[9]  He had been allowed to sleep in the intervening time after arrest. The interrogation was short, with only fifteen minutes elapsing between its start and the time it was signed. There is nothing coercive in these time intervals. Investigator Young did not take the second statement until Monday afternoon. The waiver was signed at 2:38 p.m. and the statement concluded at 2:50 p.m.; again, less than fifteen minutes.

The long interval between the arrest and the taking of this statement (or even the initial statement for that matter) is a negative factor as Defendant was not taken before a judge prior to either statement. However, it is not necessarily controlling. The Supreme Court has stated:

> No single litmus-paper test for constitutionally impermissible interrogation has been evolved: neither extensive cross-questioning--deprecated by the English judges; <u>nor undue delay in arraignment</u>--proscribed by McNabb; ...

*Culombe v. Connecticut*, 367 U.S. 568, 601 (1961) (emphasis added).[10]

Although *Culombe* involved a state prosecution, the reasoning should apply here since, as is discussed in footnote 10 of this recommendation, the federal statute is not applicable. The lapse of time should only be a factor in the totality of circumstances which

---

[9] Most likely, such testimony would be speculative. It could not be known for sure whether the pills Defendant took were actually ecstacy, whether they were adulterated, what the strength of the dose was, or how much alcohol he had consumed.

[10] The reference to McNabb is to *McNabb v. United States*, 318 U.S. 332 (1943), where the Supreme Court found evidence to be inadmissible based on federal statute and the Court's inherent supervisory authority over the federal court criminal system, not the constitution.

must be considered. Nothing suggests that authorities held Defendant for an improper purpose, such as using the detention as a tactic for coercing a confession. There had been a shooting with serious injury. Police had a clothing description matching Defendant's clothing when he was arrested. In the interval, they continued investigating the case and obtained witness statements implicating Defendant and providing a possible motive for the shooting. Further, the officers learned that Defendant was on parole and that he was, therefore, likely a parole violator. The total interval from initial arrest to the second statement was approximately thirty-seven or thirty-eight hours and Defendant makes no contention that he was denied rest, food or otherwise subjected to coercive conditions during the interval or either interrogation. The statements at issue were taken within the forty-eight hour period set as a deadline for initial appearance after arrest by *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). Investigator Young gave Defendant the *Miranda* warnings the second time, just before giving the second statement, and asked Defendant about his understanding of those rights and his waiver at the onset of the recorded statement. There is no allegation or evidence that Investigator Young overreached in any way in taking the statement. The passage of time during which Defendant was held, without more, does not render the statements or the waiver involuntary and does not amount to a constitutional violation.[11]

---

[11] Although this is a federal prosecution, 18 U.S.C. § 3501(c) (which deals with validity of confessions when there has been a delay in taking the defendant before a magistrate judge or other officer empowered to commit persons charged with federal violations) would not be applicable because Defendant was arrested by state officers for violations of state law, and no federal officers participated in the arrest or taking of the statements. *United States v. Chevre*, 146 F.3d 622, 624 (8th Cir. 1998). Defendant has made no contention that there was an untimely delay in his being seen by a state judge. In fact, neither side presented any evidence as to how long Defendant was detained without seeing a judge after the statement was made. He was not indicted on the current federal charge until March 4, 2005. At that time, he was in the Arkansas Department of Correction,

The waiver, the audio recording and transcript reveal that Defendant was fully apprised of his rights not to talk and to counsel. They further reveal that the investigator did not coerce, intimidate or deceive Defendant. It is thus clear that the admissibility of the statements at issue depends on the question of Defendant's alleged impairment from the use of ecstacy and alcohol.

We have only Defendant's testimony to establish that he was impaired from substance abuse. He says that he took four ecstacy pills and drank part of a bottle of brandy, which was shared among the four individuals in the car. The Court can accept the proposition that Defendant may have taken drugs and drunk some amount of alcohol on the night in question. However, his credibility is subject to serious question. The preponderance of the evidence is that he was not so impaired at the time of either waiver or either statement that he was incapable of understanding the nature of the rights he was waiving and the consequences of doing so. First, we have the testimony of the arresting officers, who did not think Defendant was under the influence, as well as that of Investigator Young, who stated that Defendant seemed fully capable of understanding what he was doing on both occasions. Second, we have the actual audiotape of the second interrogation. Defendant appears to fully understand what he is being told and what he is being asked. Investigator Young stated the opinion that Defendant was, in fact, manipulating him through evasiveness and a selective memory. The tape bears this out. At any sensitive point, Defendant either became evasive or stated that he did not remember. Third, we have the facts that six hours elapsed after Defendant's arrest before

---

apparently on separate state charges.

any statement was taken, and some thirty-eight hours elapsed before the second. This was surely adequate time for any impairment to dissipate. Defendant's testimony that he remembered nothing and slept for four days is simply not believable, especially given his signed waivers and statements and his obvious competency when the audiotape was made of his second statement. Fourth, and most importantly, there are serious inconsistencies in what Defendant has said at various times about the level of his supposed intoxication. These inconsistencies render his testimony incredible. At the hearing, he testified that he remembered nothing about events after his group arrived at the Brown Sugar Club. Under direct and cross examination, he repeatedly denied remembering riding in the car, the police chase, the arrest, signing either waiver or giving either statement. Yet, he told the examiners at SeaTac that he did remember events after leaving the club. The report states:

> Mr. Phillips stated there was no one around at the club by the time he awoke, but he remembered his "homeboys" telling him to get up and get in the car. He stated he got into the car, which then headed back to Pine Bluff. The defendant alleged a police cruiser had passed by them on the road and that, 20 minutes later, the police were behind them with their emergency lights flashing. He stated the police ordered them out of the car. Mr. Phillips claimed he was then thrown on the ground, kicked in the back of the head, and was knocked unconscious. He alleged he regained consciousness later in the detective's office, passed out again, and awoke several hours later at the county jail.[12]

Defendant testified at the suppression hearing that he remembered waking up in the sheriff's office, but then went back to sleep and remembered nothing about the interrogations. It seems strange that he would remember waking up when nothing happened, but had no memory of being awakened, being warned of his *Miranda* rights and

---

[12] *See* Def.'s Ex. A, second page.

13

giving two statements, on two occasions separated by a substantial period of time. This testimony is simply not believable. Another inconsistency is that at one point Defendant told the examiners at SeaTac that he usually did not take four pills in a short time. However, he also told them in giving his history of drug use that he had increased his ecstacy use to "three to four pills, two to three times each day." A review of all his statements, the confessions at issue and his testimony support Investigator Young's conclusion that Defendant's memory is selective and that he is manipulating his story to evade the consequences of his actions. In fact, Defendant's testimony at the hearing supports that conclusion. For example, when asked if the signatures on the waivers and the first statement were his, he equivocated, first saying he did not know and then that he guessed so. Finally, pleading intoxication and lack of memory is a convenient way of trying to invalidate a statement which Defendant realizes was improvidently made. He certainly has a motive to falsely exaggerate the level of any impairment when the statements were made.

## CONCLUSION

Taking into account all relevant factors and looking at the totality of the circumstances in this case, the United States has shown by a preponderance of the evidence that the waivers and statements were knowing and voluntary and that Defendant understood the rights he was waiving and the consequences of doing so. The motion to suppress should be denied.

DATED this 6th day of February, 2006.

_____
UNITED STATES MAGISTRATE JUDGE